■ BEN A. LIPSHY, Respondent, v STEPHEN J. SABBETH et al., Appellants.—In an action to recover damages for the breach of a contract to purchase real property, the defendants appeal from a judgment of the Supreme Court, Nassau County (Brucia, J.), dated May 15, 1986, which, *inter alia,* after a

nonjury trial, is in favor of the plaintiff and against the defendant Sabbeth in the principal sum of $35,000, representing the down payment on the contract which had been placed in escrow and which ordered the defendant Max Weisler, as escrowee, to deliver the escrowed funds to the plaintiff.

Ordered that the judgment is affirmed, with costs.

The plaintiff and the defendant Sabbeth entered into a contract whereby Sabbeth was to purchase the house owned by the plaintiff. Prior to execution of the contract, Sabbeth had the house inspected, and based in part on the results of the inspection report, was able to negotiate a reduction in the selling price. Attached to the standard real estate contract utilized by the parties was a typewritten rider prepared by Sabbeth's attorney, the defendant Weisler.

Paragraph 1 of the rider provided that the seller made no representation or warranty regarding the physical condition of the premises, and that the purchaser had inspected and was aware of its condition and agreed to accept the premises "as is". However, in paragraph 14 of the rider, the seller represented that at the time of closing, the plumbing system would be in "working order" and the roof would be "tight". If the purchaser were to determine that such was not the case, the seller would be obligated to repair these items, but his obligation to repair would not exceed the sum of $7,500, with the costs of repair to be "based upon estimates obtained from independent repairmen". In the event these estimated costs exceeded $7,500, the purchaser could elect to consummate the transaction and receive a $7,500 credit against the cash portion of the purchase price. If the purchaser chose not to close based on the provisions of this paragraph, he would be entitled to the refund of his earnest money escrow deposit. In any event, the purchaser would be obligated to close if the seller elected to bear all estimated costs required to put the plumbing into "working order" and to make the roof "tight".

Approximately two months before the scheduled closing date, Sabbeth had the house inspected by a second engineering firm. As the trial court found, the report of this inspection revealed no significant changes in the condition of the premises since the first inspection, conducted some eight months earlier. Soon after receiving the report of the second inspection, Sabbeth informed the plaintiff that necessary repairs to the house would cost between $60,000 and $70,000. However, this information was not accompanied by any written estimates, and Sabbeth did not specify which, if any, of these

allegedly necessary repairs were those required to be made pursuant to paragraph 14 of the contract rider.

Although the plaintiff refused to undertake the repairs requested by Sabbeth, he did agree to reduce by $50,000 the purchase-money mortgage called for in the contract of sale. Apparently this proposal was not satisfactory to Sabbeth because by letter dated July 16, 1982, his attorney informed the plaintiff that Sabbeth "does not elect to close and desires return of the escrow". The plaintiff's attorney replied that the claims of Sabbeth related to conditions for which the plaintiff had no responsibility under the contract. Since Sabbeth had provided no estimates of the costs required to put the plumbing system into working order and to make the roof tight, the plaintiff could not agree to the return of the escrowed down payment or to cancellation of the contract.

Although the plaintiff and his attorney appeared for the scheduled closing, Sabbeth did not. Subsequently, the plaintiff commenced the instant action, alleging that Sabbeth willfully breached the contract of sale and seeking as damages the down payment of $35,000.

At the trial, a roofer who had been hired by Sabbeth to inspect the roof at about the time of the second engineer's inspection testified that the roof was not tight because "[t]here were slate and things missing". However, he also testified that the cost of repairing the roof so that it would be tight as required by rider paragraph 14 would be only $3,200. Although an engineer testified that the plumbing system would eventually require a complete overhaul, this was due to the deterioration that might normally be expected in a system of that age, and was evident at the time of the first inspection, prior to the time Sabbeth entered into the contract. This witness was unable to say that the plumbing was not in "working order". Barbara Marcus, the plaintiff's daughter, who lived in the house from 1973 through 1983, testified that with the exception of occasional minor leaks in the system, "all the plumbing worked".

Accordingly, the trial court concluded that Mr. Sabbeth did not act in good faith in attempting to cancel the contract pursuant to paragraph 14 of the contract rider *(see generally,* 22 NY Jur 2d, Contracts, §§ 293-295), and correctly determined that the closing did not take place due to his willful breach of the contract. Therefore, since the plaintiff was ready, able and willing to perform, Sabbeth was not entitled to the return of his down payment *(see, Cooper v Bosse,* 85 AD2d 616, 618; 62 NY Jur, Vendor and Purchaser, § 137, at

406), and the plaintiff was entitled to judgment in his favor. Mangano, J. P., Thompson, Lawrence and Kunzeman, JJ., concur.